## Caudell v. Commonwealth.

May 30, 1941.

146

R. H. Cannon for appellant.

Hubert Meredith, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

This is an appeal from a judgment sentencing appellant to ten years' imprisonment for incest committed with his infant daughter. Since the testimony is revolting, and its sufficiency to support the jury's verdict is not questioned, we shall refer to such facts only as are relevant to appellant's contentions that the Trial Court erred in denying him a continuance and in eliminating from his affidavit, read to the jury, certain statements attributable to witnesses because of whose absence the continuance was sought.

Of the eighteen absentees, sixteen were "character witnesses" who would have testified that appellant's reputation for truth, veracity, morality, good conduct, and similar characteristics was good, and that of his daughter, bad. Some of them would also have testified to the bad reputation of two persons supposed to have influenced the daughter's testimony, but who were not introduced as witnesses    The Court struck from the affidavit all references to appellant's reputation for truth, veracity, good citizenship, good conduct, peace

and quietude, but left intact the statements pertaining to his good reputation for morality. The Court also eliminated the references to the reputation of the two persons who did not testify, but left in the affidavit the statements that the reputation of the daughter for truth and veracity, as well as for morality, was bad. Since appellant's reputation for truth and veracity and good conduct had not been attacked, and the reputation of persons not introduced as witnesses was immaterial, it is obvious that the Court's rulings as to the non-admissibility of the indicated portions of the affidavit were correct.

The other absent witnesses were **Dr. Jones** and Dr. Crawford. Except in so far as it related to the reputation of appellant and his daughter, the affidavit as to what Dr. Jones would have testified, if present, disclosed that he had examined the daughter some four years previously when she was fourteen years of age, found her vaginal membrane intact and concluded that she had not had intercourse with any man. Since she had testified that her father had begun his unsuccessful attempts to penetrate her when she was only nine years of age and had succeeded in accomplishing the act when she was between thirteen and fourteen, it may be conceded that Dr. Jones' testimony was important, notwithstanding the Commonwealth's medical testimony clearly showing that she had been deflowered prior to the trial, and the medical testimony introduced by the Commonwealth in rebuttal that the "vaginal membrane," as distinguished from the "Hymen," is never broken by sexual intercourse. But be this as it may, no reason for Dr. Jones' absence was shown, and the jury was apprised of his testimony by means of the affidavit.

Dr. Crawford, if present, in addition to testifying to the good reputation of appellant and the bad reputation of the daughter, would have stated, according to the affidavit, that in November, 1939, the appellant came to his office, in company with his second wife, suffering intense pain in his stomach, and that an examination made by the doctor disclosed that the cause of the pain was "poison in his stomach". The Court excluded that portion of the affidavit relating to the visit and the supposed poisoning, and it is contended that this was error since the incident tended to support

appellant's theory, not supported by the facts, that the daughter's testimony was inspired by the second wife in aid of her effort to get rid of him and procure his property through divorce proceedings. But the incompetency of the testimony is apparent on its face, as it was not shown that either the wife or the daughter was the poisoner, the appellant was not on trial for an offense against the wife, and the wife did not testify.

The indictment was returned more than eight months prior to the date of trial and several continuances had been granted. Numerous character witnesses were present and testified as to the reputations in question. Attachments were not sought against the absent witnesses, and, as above stated, appellant was permitted to read his affidavit setting forth the testimony which the latter would have given had they been present. These considerations conclusively refute appellant's contention that the Court erred in overruling his motion for a further continuance.

The only other ground for reversal urged by appellant's counsel is that the jury, while considering its verdict, procured from an undisclosed source, a letter written by the prosecuting witness to the County Attorney in which she narrated the facts to which she subsequently testified without material variation. In thus inspecting a document which the record does not show was introduced in evidence, the jury was doubtless guilty of misconduct which might have entitled appellant to a new trial if the fact had been shown by competent testimony. However, it was not shown except by the affidavit of a juror, improperly filed with the Clerk of this Court and heretofore stricken from the record pursuant to the provisions of Section 272 Criminal Code of Practice which prohibits the examination of a juror to establish a ground for a new trial, except where the verdict was made by lot. Salyers v. Commonwealth, 229 Ky. 153, 16 S. W. (2d) 509; Shepherd v. Commonwealth, 269 Ky. 237, 106 S. W. (2d) 988. If the affidavit of the juror was admissible under any circumstances, we would, nevertheless, be precluded from considering it because it is not shown to have been filed in the Circuit Court except by an indorsement of the Clerk made thereon long after the motion for a new trial had been overruled.

In our consideration of this case we have not ignored the oft repeated assertion that appellant's conviction was the result of a "frame-up". Neither are we unmindful of the fact that the abhorent unnaturalness of the crime charged militates against the probabilities of its commission by a normal man. So prepared, we have searched the record in vain for evidence which would indicate that the jury's verdict was the result of passion or prejudice. Not only was the daughter's testimony corroborated by the testimony of an eye witness to the act, but it bears the ring of truth; and all suspicion that the girl's testimony against her father might have been inspired by improper motives is dissipated by the compassionate and factual letter written by the wife to his mother and introduced in evidence with his consent.

Judgment affirmed.